The second case this morning is 4110254, Braglio v. Village of Wapella, for the appellant Dawn Wall and for the appellee David Hader. Please proceed. Thank you. May it please the court counsel, my name is Dawn Wall and I represent Jane Braglio and we are here, your honors, on a case that was reviewed from the circuit court in DeWitt County and the appellant in this case, Ms. Braglio, was a candidate for election at the Village of Wapella election in April of this particular year. We filed a writ of mandamus petition after we learned that the acting circuit clerk, Shea Burke, was refusing to certify Ms. Braglio as a candidate for office at that April 2011 election. And certainly that election has now passed, but we would assert to your honors that because of the nature of the issues that were raised by the writ of mandamus petition in this case, that this particular controversy still requires a directive from this court with respect to the interpretation of the statute that Judge Freese held was not a viable opportunity for Ms. Braglio to appear on the ballot. Ms. Braglio initially filed competing nominating petitions for office. She had filed a nominating petition to run for the village clerk and then she also filed a petition to run for village trustee four year term. Under the statutory provisions, of course, there's no question that within five business days of the last day for filing her original nominating petitions, she would have had to withdraw one of those petitions because indeed it was for a competing office. December 20th, by agreement of the parties, was the last day when nominating petitions could be filed. Therefore, if we read the statute strictly requiring that any withdrawals be filed within five business days of that last day, we would assert that the last day for Ms. Braglio to present her withdrawal petition would have been December 28th. And Judge Freese found that the last day was December 27th and that Ms. Braglio presented her withdrawal to the village clerk after ordinary village hours. It occurred at about 8 o'clock that evening. But I think it's extremely important, your honors, that the facts presented in support of the writ of mandamus be considered. And certainly the review process here would require me to establish that the factual evidence and the finding by Judge Freese is against the manifest weight. And I do believe that I can meet that standard. Shea Burke testified at the evidentiary hearing that she did not work at all on December 24th. That was a Friday, that was a recognized holiday by the state of Illinois. However, there was another village employee at the village hall on December 24th. She testified that her time records, Kim Donovan's time records, showed that she worked six hours that day. That's why in our assertion it's extremely significant that Judge Freese counted December 24th when he counted five days from the last day for filing of the nominating petitions. There is no evidence that anyone performed work inside the village hall on December 24th. And clearly there is no evidence that the local election official, Shea Burke, even worked on December 24th. Judge Freese found that because there were two village maintenance workers working inside the village of Wapella and in locations remote to the village hall, that that meant that there was sufficient conducting of business to equal a business day for purposes of the election law. And my reading of the statute and the plain language of the statute at Chapter 10 of the Election Code, Section 5.1-3, which is the definition section, it clearly defines business day as a day when either the local election official or the county clerk or the state board of elections was open for a minimum of seven hours. And certainly this particular statute has been before this court previously in a case where... I believe it would not have... Well, it may have been filed if she left it with the administrative assistant, Your Honor, but we have no way of knowing whether that individual would have done anything with it. And Shea Burke, the acting village clerk, by her own testimony said, nobody has any authority to perform my functions. It's not a function I can delegate. She even said the village board did not have the authority to do that. And the only evidence that was before Judge Freese for consideration was that Kim Donovan, an administrative assistant, was working six hours that day. But by her own testimony, Your Honor, she doesn't meet the minimum requirement of being open for seven hours. And the reason I believe that this particular issue and controversy is significant is because if we take this decision of Judge Freese to the next step, it means that if we have a snowstorm on a weekend, or a snowstorm on Columbus Day, or Friday after Thanksgiving, and that is not a declared legal day off by these entities, and maintenance individuals are called in to plow snow, or do anything else, then with the interpretation given by Judge Freese, if any maintenance worker, on-call worker, any other personnel report to a state office, or the State Board of Election, or a county official's office, then that is going to count as a business day under his interpretation. And I would assert that when the legislature created this definition of business day, the legislature was very specific in saying a business day is only a day when that office is open for a minimum of seven hours. Now certainly, if Shea Burke would have been there longer than eight hours, no one would be objecting, but I do believe that this statute sets a floor. And that if the office is not open and conducting business for that seven hour period, then we as members of the public, who are required to carry out certain functions in a timely fashion, we're not on notice that that office is operating and conducting business. And I would assert to your honors that certainly Ms. Baraglio was not on notice that anyone was working at the Village Hall on the 24th. She did check with the state election officials. They indicated that it was a holiday for them, and therefore, I think it would have been reasonable for her to understand that the local authority also was recognizing it as a holiday. I acknowledge, your honors, that in the Bush case, there was that disagreement between hours at the state board and hours at the local, and this court determined that the local election authority's hours controlled. And in this instance, if they would have staffed that office with a clerk on the 24th, I probably wouldn't have an argument before this court. But here, they did not staff that office for seven hours. And I also would suggest that in addition to the definition of business day, the definition of local election authority is extremely specific. The legislature took great care in defining what local election authority was. They even mentioned the office in particular for the school board. And I would suggest that if we give that definition of local election official, it says it means the clerk or a secretary of a unit of local government. And here, there was no testimony that an official secretary of the village board or the village clerk was at the hall on December 24th. So I would suggest, just by doing a mathematical calculation, if we leave off the 24th, then Ms. Baraglio had until December 28th, and clearly the testimony from Shea Burke, the acting village clerk, was that she took that withdrawal petition to her office on the morning of the 28th when she arrived there about 11 a.m. And she filed it on that date. Now, even if there is room to say that December 24th at this local municipal government was a business day, I would assert to your honors that the fact that Shea Burke, the village clerk, testified that she was not even in the office on December 27th, which was a Monday, for more than three hours. She testified she stopped in at 11.15, she left at 2.15, and then she was called back to town by the mayor. Do you have to hand the withdrawal notice to her? Or can you hand it with the secretary who's there? I think, your honor, if it would have been the secretary of the village board, a designated secretary official of the village board, and that municipal group of government, she may have been able to do that. But certainly the statute defining local election officials says the clerk or secretary. And so I would assert that if you filed it with an administrative assistant, particularly in light of Shea Burke's testimony, that she didn't have the ability to delegate that authority to anyone. So I believe that my client may have been amiss in attempting to do that. And then, of course, there is the factual wrinkle in this case, where my client was unilaterally barred from even going into the village hall. That she had to get dispensation from some village official before she even entered into a public place. And that was a unilateral bar of her being able to enter into the village hall. Judge Freese said, that's completely irrelevant. Somebody else could have conducted this on her behalf. But we have to, I think, honor her capacity as a member of the general public. And as a member of the general public, and a candidate seeking office, she should have had free opportunity to file her own document. She testified, Ms. Broglio testified, that she attempted to do that at about 440 on December 27th. But by admission, Shea Burke was not there. In fact, the village clerk was only there for a three hour period. The mayor gets on the phone with my client, and the mayor of this little community calls Shea Burke, who's in Bloomington, and says, come to Wapella, it's about a 15 minute trip, and come to Ms. Broglio's house with me, so that we can accept her withdrawal of candidacy. I think, even if we, for a moment, ignore the counting of the business days, when the highest elected official of this local form of government says, gives a directive to the clerk to come with him, in order to accommodate the request of a candidate seeking office to be able to file a document, because this municipal entity doesn't adhere to ordinary business hours for their clerk, and because this municipal entity unilaterally barred Ms. Broglio from going into the village hall, I think in this instance, the village loses the right to argue that it was not timely for Ms. Broglio to present her withdrawal of her nominating petition to the clerk outside of the business hours. I argued to Judge Freese that this was similar to the Welch case, however, I have to concede that factually it's different, and Judge Freese said, in the Welch case, they were in the office, they had their foot in the door, right before 5 p.m., and just because the clerk accepted it later than 5 p.m., that doesn't give Ms. Broglio a pass to file at her home after that. And certainly, there was a similar case where I think a candidate tried to file something at their home just shortly before midnight, and the clerk accepted it, and the court said, no, you can't do that, that was at someone's home. In this instance, I think that the fact that Ms. Broglio had no opportunity on a regular basis to file documents with this clerk, and the fact that the mayor directed the clerk to do this, and had accepted documents in this fashion previously for my client, I do believe that the village has waived that argument. I believe that Ms. Broglio timely presented her withdrawal. It was accepted by the clerk on December 27th. There was no indication by the clerk at that point in time that it wasn't timely. The clerk testified she filed it the morning of the 28th, which I would assert, under the definition section of the election code, she complied with the five days from December 20th, because we don't count December 24th. And on that basis, I believe that she should have been given certification to be on the ballot as an independent, or as a candidate for the office she was seeking, because at that point she had cured any issue with her competing nominating petitions, and she had appropriately filed her withdrawal. On that basis, I would ask that this court reverse the findings of Judge Freese, find that we were entitled to relief on our writ of mandamus, and issue a public directive that this municipal body of government and others in the state of Illinois have to adhere to the strict statutory provisions of the election code. Thank you. Thank you. Counsel? Let me please the court. I have a conflict here because she's said a lot of things that I disagree with and can actually cite to the record for, but I also have a very major disagreement with the public interest exception to mootness applies, and the oral argument is very important to that if this court considers it, because we consider it waived. We know that waiver doesn't bind the court, but if you look at the appellant's brief dealing with the public interest exception, you will see that at the end of their first argument they have perhaps two sentences, one or two sentences that says, well, this is an important case. There's no reasoning. There's no argument. There are no citation of authority to that regard, and then when we raise it in response in our appellee's brief, then they come out swinging in their reply brief trying to show that it really is a matter of public importance, and therefore we think it was waived, but if it wasn't waived, we have no other opportunity to respond to it than this oral argument. At the same time, there were a number of statements made during her argument, such as the fact that the only person that could receive this was the acting village clerk and that there was nobody else that had been delegated or that could take it, and if you look at the transcript, I think it's volume two of the Record on Appeal, at pages 50 to 52, there are questions such as, was there a trustee that you authorized to receive these in the event that you were not physically in the hall? Yes. Who was that? Sharon Williams Riddle. Prior to that, she was asked, is there an administrative assistant that works for the village? Yes, and her name is Kim Donovan, and did you, during the five days withdrawals could be submitted, authorize her to receive these if you were not available? Yes. Did you make that public? I'm sorry? Was that made public, that Donovan could accept the documents? I don't think, first of all, that there's any legal requirement to do any sort of posting. That doesn't really answer the question. I'm sorry? That really doesn't answer Justice Cook's question. Was it made public? I don't believe that it was, but I don't believe that we had to. How is it that the village can bar somebody from the village hall? That's another issue which I am not fully aware of. I know that she was allowed to come into the village hall to file her candidacy papers, and I think if she had come to the village hall and merely come in, that when she, if anyone came to escort her out, and we don't know that anyone would have, that she could have said, I'm here for the same election-type purpose that I was admitted before, and she would have been admitted. I think the idea of driving by a village hall and perhaps looking for an automobile in a parking lot, instead of going into the village hall and seeing if the doors were open, if the clerk's office was open. Well, Burke admitted she wasn't there. Pardon? Burke admitted she wasn't there. It doesn't matter because I think it was this court's decision, the Bush case, I believe, basically says that it is the office that other people can do it. It doesn't have to be physically or personally, solely the clerk. Also, the statute. Well, I don't disagree with that point, counsel, but I'm wondering if Ms. Peraglio was conversant with our case law that provided such. Well, let's put it this way. Everyone is presumed to know the law, and it doesn't excuse her from not getting out of her car or crossing from the post office. Remember, at one point she was across the street at the post office, and it doesn't say that she cannot, like any other citizen, go across the street and open the door, and the door would have opened. It was found that the village hall was open. It seems to be fairly clear to me that the village officials made it fairly clear to her that she was not to be in the village hall under any circumstances unless there was a public meeting and that she could attend that. But that, see, her own conduct contradicts that, because she went in to file her candidacy papers in the first place. Now, also the statute... She had to get permission to do that. I'm sorry? She had to get permission to do that? No, she just came in. And she would have. I mean, election is something that they don't control. They were talking about their local, for whatever reason, their local village business. Also, the statute, 10-7, the election code, talks about you present these to the principal office or permanent branch office of the board, that means the state election board, comma, the election authority, comma, or the local election official. So you're talking about the principal office of the local official, and she didn't go to the office. And so it's not just the Bush case. The statutes would have told her she goes to the office, she could have filed it with anyone there. The statement that she said from the stand that the only one who could take it is her is contradicted by the quotes that I read to you from the record that was made in this case. Now, having at least raised questions about the factual accuracy of what you've been told, what I would like to do is to go on and say why this is not part of the public interest exception. First of all, as we say, we believe, well, it's clearly moot. Everyone admits it factually, it's moot. The next thing is, is it worth it? I just want to go back to where we were for a minute. So Burke is the acting village clerk, and she's not there. But you say anybody else in the hall can accept the documents? How about the janitor? I don't know about that, but I can tell you this, that the burden of proving that there wasn't somebody there was the plaintiff's. She brought in the time. So are you going to answer my question? You're going to switch to something else? No, I'm trying to answer your question, but ask it again so I'm sure. If the clerk is not there, you say she can leave the piece of paper with anybody in the building? Well, anyone who's, you might say, part of the, who's been asked to tend the desk. I don't know how big a village this is. So if Burke says to the janitor, take any documents that people bring in to file, that takes care of it, right? If it's in the village office, I would think so. I mean, I don't know how big Raqali is. In the city of Chicago, you could say, well, it has to be a particular staff in a particular office. If you've got a really small village, everyone pretty much wears all the hats. And so if they're in an official place where they can fulfill the legal requirement, which is it's there for public access and for public recording, and if they're at that desk, then I believe that that would be sufficient, at least for it to be held until the clerk comes in. As a councilman in my former life, I did some municipal representation, and not for the city of Chicago and not even for the city of Springfield, but for places like Iliopolis and Ashland and Virginia. And I will tell you this, that if somebody tried to file something in the village of Ashland and the only person there was Fleabike who ran the snowplow and cut grass during the summertime, nobody would ever consider Fleabike to be an official capable of receiving nominating petitions. I mean, not in any universe. Right, but I don't think he would have been put behind the counter to do that. But the point is, I mean, you've said anybody, any village employee who is in the janitor, for instance, could have taken this had they been authorized. Number one, how would somebody know that they've been authorized? And number two, is it really, and I'll use, you know, my example of Fleabike. Nobody would ever consider that to be an appropriate person to file documents. Right, but I think you're taking my language too far. I said whoever was left behind the desk specifically to perform that function. She had a trustee that she delegated to. She had an administrative assistant that she delegated to. I presume if the mayor was there, he could have done it. There's no legal requirement that someone have been officially designated by ordinance or whatever, she's in charge of her office. How would a member of the public know who has actual authority or apparent authority? By going into her office, I would assume that not the whole world can get behind the counter. And therein lies a little bit of a problem because this lady had been borrowed from the village hall, except under certain circumstances. Now, this is not the case to take up that question. I mean, there's probably, you know, other methods of litigating that issue. But, you know, I'm looking at it from the standpoint of the prospective candidate saying, okay, I've been told I can't go there unless there's a public meeting going on. And this is a small community. It's very strange that she can't, first of all, that she claims she couldn't have entered the village hall, but she did it twice before for other offices, number one, and that although she's barred from the village hall and she's this person who's persona non grata, she can get the mayor to come with the village clerk at 8 o'clock at night to her home to give her personal service. I mean, there's something wrong with this picture. It doesn't ring true. At least for this office and this function, I disagree. I disagree. I think if she called the mayor and said, hey, I've tried to file this stuff. Nobody's there. I'm not allowed in the village hall. What are you going to do about it? The mayor's hopefully had a little bit of an inkling that maybe barring a citizen of the community from the village hall was not the best idea in the world. So I'm going to try to go and try to take care of this problem so we don't get into a big problem and get sued. All right. Let me turn this around, your questions, and say that what you've been asking me about is so special to Wapella and so unique to these circumstances that it does not qualify for the public interest exception to mootness. Mootness requires something of a liability. Am I going to keep doing all this garbage? As the justice said, the issue of the letter is for a different case. If she were to challenge it, I don't know what they would do. She obviously hasn't challenged it. She took the letter. She's going to court over this. She didn't go to court over the letter. She didn't obviously challenge it in some way, but that's for another day, whether the village will rise up, whether counsel will be heard to help the community, whether a court will rule. But that's a different case. We're dealing now with a case that's moot, that the election was held on April 5th. It's over and done with. The question is, will this be necessary to guide other courts? Is it of such general importance and of such repeatability statewide that there needs to be some guidance? Now, number one, they didn't think to argue it in their appellant's brief. They put down the one or two sentences. And the law is clear that if you don't cite cases at all, you haven't argued it. If you haven't argued it in your principal brief. You were the one that raised the issue. They had two lines in their original appellant's brief. They realized that it was an issue. We responded, and then instead of putting out their authority in their appellant's brief with their two sentences, and they had plenty of pages left to do it in, they hold back their fire. You were the one that really hit on this. How did they anticipate what your major argument was going to be? Well, they anticipated it by stating it at the end of their argument. And if you look at the end, I forgot which page it is, but if you look in their brief at the end of their first argument, you will see that they talk about the public interest exception. They call it something else that ends with a C, but it's like interest, a public something concern. I think it was public concern exception. So they put it in there, and they raised it. They knew it was an issue, but they held all their fire to the reply brief. Don't we have to tell a WAPLA appellant what to be doing in the future, whether the clerk needs to be there for the five days, and whether the office is considered to be open when the clerk is not there? There has also been a fatal variance in this case. Forgetting that if you look at their complaint, paragraphs 10 only says that the clerk did not maintain... Let's see, what was the actual... Well, you don't want to answer my question. I'm sorry? So you don't want to answer my question. I think I am answering your question. You're asking me about a case that is not before the court. Which is the standard definition of a public interest exception. Is this going to guide future conduct? But what I want to say is in their complaint, they have to stay with their complaint. You can't have a fatal variance. In their complaint, what they raised is that they didn't maintain, I forgot the exact quote, regular hours or something like that, or whatever the language was. Two paragraphs down and three paragraphs down, paragraphs 12 and 13, they refer to the State Board of Elections, which means that the complaint read in its context was their challenge was that our days did not comport with the State Election Board days. That's what they raised. All the stuff about how long she was in the Village Hall and who else was in the Village Hall, none of that was factually alleged or part of their complaint. And in the mandamus, they have to strictly allege the facts that they rely on and prove those facts. So what this case has had is lengths. It's moved from what they actually alleged in their complaint to this other case now where we're quibbling over who was in the Village Hall and how many hours they were there. Which, by the way, was their burden to prove. And all they proved was that one or two people weren't there. They didn't prove that there wasn't someone there of a reasonable level to take the papers. They could have, if they got the time records for the clerk, they could have gotten the time records for everyone. Or they could have done something else. But they had no personal knowledge, and they didn't go beyond the clerk and this one assistant. They didn't talk about the trustee that was authorized. They didn't talk about anyone else. So they covered six hours in that day. Who's to say that there wasn't another person there, it was their burden to prove there wasn't, that they didn't follow that burden, that wasn't there for the other hour to make it a seven-hour day? One hour. And they decided, well, we can prove that this lady was only there for six hours. Let's be silent about that last hour. But the burden of proof is on them to prove their case that there wasn't someone there. The burden isn't on us to say, oh, well, but there were these other people. They didn't carry their burden. Their case doesn't track their complaint. They have unique facts. They're quibbling over the burden of proof. The burden of proof in this case is not going to help other, whether the court erred or didn't against the manifest way of the evidence, is not the type of guidance that, it's ad hoc. It's not going to help other courts with a public interest exception to the mootness rule. Everything about this case is just a one-off. And some of the factual statements that were made, as I say, I could read to you, were not accurate. I think I still have five minutes. So that's where we are. And I do think that because it's- What facts are we missing here? We know that Burke was not in the office on the 27th. But if the office can accept, which I think Bush holds, that it doesn't have to be the clerk- You've been complaining about the lack of facts we have in this case. I'm asking what facts we're missing. We know where Burke was on the 27th. We know what Burke said to Donovan. And we know what the plaintiff did in relation to driving by, looking for the car, and not going in. What more facts do we need? They haven't proved that there wasn't someone there. Maybe this trustee that she testified was also authorized to be there, just like the assistant was authorized to be there. There's no evidence that that person wasn't there for the one hour. How is that going to be proven? Do you have to take the deposition of every city employee? No, you put them on the stand like she put the others. What's wrong with the subpoena? It's their burden to put evidence on the stand. Like he says, she has to call every city employee and establish that they were not there. Well, I don't know about every city employee, but certainly she testified that the trustee- Here's the way I think the rule is. All she has to do is make a prima facie case. She does not have to prove everything that could possibly have happened. The burden switches to you at some point. But the prima facie case is that there wasn't someone there for seven hours. She only proved there wasn't someone there for six hours. It's still her burden. If she says that office was closed or that it didn't meet the statutory standard of a business day, which is her position and her burden, she only proved six hours. She didn't prove the seventh hour. There were six people there. Of six hours, it was covered. She had to go and prove the seventh hour it wasn't covered. Without that, she's got someone there for six hours and a presumption that someone was there without her proof otherwise, because it's her burden of proof, that there was someone there for the seventh hour, and therefore she has no case on that basis. Some of these things are issues of law that she never argued to the trial court. She never argued about notice to the public, some sort of posting. She never argued the law that a village clerk couldn't have someone appointed to cover while she wasn't there. These are issues of law that they never raised, never argued, never gave authority, as far as I can see on the record I've seen, to establish those points. These are all the burden. Thank you, counsel.  Rebuttal, please. Very briefly, your honors. With regard to the facts that counsel mentioned about Sharon Williams being available as a trustee, that was contradictory testimony when Mr. Justice called Shea Burke to the stand. I think he did recall her. When she testified in my case in chief, she said she didn't have the ability to delegate that authority. And with regard to Sharon Williams, I did prove that she wasn't there because Kim Donovan's time card indicated she was the only employee, administrative person, who worked that day. And I believe your honors understand the position that Ms. Baraglio was in, that she contacted and looked for the people that she had previously utilized to get permission to file her nominating papers. Counsel also failed to point out that she did, in fact, she was allowed entry into the village hall to file her nominating papers, but that was, and the testimony establishes, that was because the village was manning the village hall for posted hours. And she said the mayor told her that she could enter into the village hall during that period of time. And then of course on the 24th, our assertion is it wasn't a business day. It doesn't amount to a business day. And that I carried initially my burden of proof to show that they were not there. The clerk wasn't there at all. And so then if I had to read the statute as allowing someone other than the clerk or the secretary of the village board as authority to project... Did Judge Friesen agree with you as to whether December 24th was a business day? No, he disagreed with me on that, your honor. He said that December 24th was a business day. And that's why I believe that the evidence that was presented on that establishes clearly that the evidence was no one worked in that village hall for more than six hours. How did Judge Friesen reach that conclusion? I think he just ignored the time card of Kim Donovan. And I think he also felt that the village workers working outside of the village hall, you know, taking care of things at the park, that that was akin to having the village facility staffed. And I have been to the village hall many times in Wapella and in Downs and Hayworth and these small communities between Bloomington and Springfield. And if I as a member of the public had to go in and find a desk, initially that would create an issue for me. And then having to determine who's behind the desk, most of the time these little village halls are only open for specific periods. And I would never see the maintenance worker there. And that was one of the reasons that we do believe that it is an issue of public concern because these small villages operate where they have minimal staff during the week. And they have maintenance workers and personnel that are outside in the village limits doing all kinds of things on weekends, on holidays, on snow days. And so I think Judge Friesen's decision taken to the next level could lead communities to believe that it is a business day for purposes of calculating time if anybody reports for work that day. And I think that that's a significant issue. I do believe that we met our burden on the writ of mandamus. I do believe that we were true to our complaint in seeking the relief to have Ms. Braglio certified as a candidate. Because as a member of the public and a candidate for office, she acted reasonably, given her particular facts. And while there may not be other communities that bar people from their offices, there will be other communities that struggle with this business day definition, I believe, going forward. And the reason I didn't raise it in my brief initially is because I didn't think it was my burden to assert a defense to the jurisdiction of this court. And I did mention it in my reply brief, so I don't think we've waived that. Thank you, Your Honors. Thanks to both of you. The case is submitted. The court stands at recess until 11 o'clock.